IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.    5:24-CR-156 (FJS) |
| | ) | |
| v. | ) | **United States' Sentencing Memorandum** |
| | ) | |
| **WILLIAM SOTO,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## I.    INTRODUCTION

William Soto used two fake identities, created fake checks, and traveled to more than a dozen United States Post Offices in August 2023. When he arrived, he presented a fake check to purchase large quantities of United States Postage Stamps. He consummated the sales knowing full well that the United States Post Office would never be able to cash the checks. In doing so, he stole over $30,000 in United States Postage stamps over the course of a two-day crime spree.

For the reasons detailed below, the Government respectfully urges this Court to impose a sentence within the applicable sentencing guidelines range of 18-24 months, coupled with an order of restitution in the amount of $31,101.84; and a forfeiture money judgment in the amount of $31,101.84.

## II.    PRESENTENCE REPORT

The government has no objections to the facts, or the guidelines calculations noted in the amended presentence report. *See* Dkt. No. 29 at ¶¶ 5-11 ("PSR"). With respect to the statutory penalties, Soto faces a maximum sentence of 10 years; a maximum fine of $250,000,00; and a term of supervised release of up to 3 years. Soto will owe a $1,200 special assessment.

Probation calculated the total offense level as 8, assuming Soto continues to accept responsibility within the meaning of U.S.S.G. § 3E1.1. *See* PSR at ¶ 62. Soto's criminal history category is VI. As such, the guidelines recommend a sentence between 18 and 24 months.

### III.   SOTO'S OBJECTIONS TO THE SPECIAL CONDITION

On September 25, 2024, Soto objected to the special condition of supervised release that forbids his association with members of the "Bloods" gang. According to Soto, the PSR does not include sufficient factual details to support the imposition of this special condition. *See also* Dkt. No. 27 at 5-6 (Defendant's Sentencing Memorandum). For support, Soto cites the recent Second Circuit case *United States v. Sims*, 92 F.4th 115 (2d. Cir 2024). In *Sims*, the Second Circuit held that a similar non-association condition was improper where the offense conduct did not relate to gang activity and the record was nearly devoid of evidence implicating the defendant's participation with a particular gang. *See id*. at 126-28.

Here, the offense conduct does not involve any gang related activity. The PSR mentions that "[r]ecords checks" during his 2020 arrest showed that he was a member of the "Bloods." *See* PSR at ¶ 35. The PSR also reports that prison "[r]ecords" note Soto as a member of the Bloods. *See id*. at ¶ 35. The PSR further notes that Soto has been written up in prison for "gang activity" on several occasions. *See id.* at. ¶¶ 31, 32. In Probation's response to the objection, they explained that the "record" of his affiliation with the Bloods is based on an inquiry in the National Criminal Information Center ("NCIC"), from 2020. None of these "records" are available to review. Probation also points out that he was previously subject to the same condition related to a past conviction out of the District of New Hampshire. When he was interviewed, Soto denied being affiliated with the Bloods. *See id*. at ¶ 42 n. 1.

As of the writing of this memorandum, it appears that this case is indistinguishable from the facts in *Sims*, and, therefore, there is insufficient information related to Soto's affiliation with the Bloods gang to support the imposition of the special condition.

IV.    **GOVERNMENT'S SENTENCING RECOMMENDATION**

In this case, there is a particular need for the sentence to afford adequate deterrence, both to Soto specifically and more generally to others who engage in a similar scheme. There is a large criminal market for United States Postage stamps. Stealing stamps from the United States Post Office allows criminals to re-sell the stamps at a massive discount directly to consumers on markets like Facebook and Craigslist. The only way people can re-sell stamps at a profit is if they *steal* the stamps. A severe sentence in this case will send a signal to criminals that stealing stamps and re-selling them is a serious crime and such a sentence may deter future criminal conduct.

The Court should also take note of Soto's long and largely unbroken criminal history. In 2009, he was arrested for displaying a firearm during robbery. He was sentenced to nearly four years in prison. Thereafter, in 2014, he was arrested for drug offenses and had a large quantity of crack cocaine. He was sentenced to prison for nearly three years. Shortly after getting out, in 2019, he was arrested for disorderly conduct. Then he was arrested on federal drug trafficking charges in New Hampshire in 2020. He was on federal supervised release when he engaged in the criminal activity relevant to this case. Soto's history shows that he does not respect the criminal justice system and has no interest in living a law-abiding life. A long sentence will help protect the public from further crimes of the defendant.

For the reasons discussed above, the Government respectfully urges this Court to impose a sentence within the applicable sentencing guidelines range, coupled with an order of restitution in the amount of $31,101.84; and a forfeiture money judgment in the amount of $31.101.84.

                                        Respectfully submitted,

                                        CARLA B. FREEDMAN
                                        United States Attorney

                                        */s/ Paul Tuck*
By:   _____
                                        Paul Tuck
                                        Special Assistant United States Attorney
                                        Bar Roll No. 520814

Via ECF to Courtenay McKeon, AFPD